UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

National Union Fire Insurance Company of Pittsburg,

                Petitioner,

–v–

Beelman Truck Company, *et al.*,

                Respondents and Third Party Petitioners,

–v–

Rebsamen Insurance, Inc., *et al.*

                Third Party Respondents

15-cv-8799 (AJN)

MEMORANDUM & ORDER

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: AUG 2 4 2016
```

---

ALISON J. NATHAN, District Judge:

    Petitioner National Union Fire Insurance Company of Pittsburg ("National Union") moves the Court to order nine related companies to arbitrate an insurance dispute under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, *et seq.* Eight Respondents (the "Resistors") deny any obligation to arbitrate. The ninth, Beelman Truck Company ("Beelman Truck"), consents, and petitions to compel third-party insurance brokers to join it in arbitration. For the reasons below, National Union's petition is granted, and Beelman Truck's petition is denied.

**I.  Background**

    National Union provided insurance coverage to Beelman Truck for a four-year period from 2007 to 2011. Thomas Pet. Aff. ¶ 4. The terms of the insurance are set forth in a set of interlocking contracts including annual policies, schedules of policies and payments, and

1

biennial payment agreements.[1] *See id.* ¶¶ 6–9 & Exs. B–E. The contracts were signed by Frank J. Beelman, III ("Beelman") on behalf of Beelman Truck.[2] However, National Union claims that the Resistors, eight other Respondent companies controlled by Beelman, *see* Beelman Aff. ¶¶ 3–10, should also be considered signatories.[3]

The payment agreements each contain an arbitration clause. Thomas Pet. Aff. Ex. B at 2–11 ("2007 Payment Agreement"), at 8; *id.* Ex. D at 2–11 ("2009 Payment Agreement"), at 8. The clauses state that "If *You* disagree with us about any amount of *Your Payment Obligation* that we have asked *You* to pay," the insured must write National Union with the details of the disagreement, and National Union will provide a written response. If the dispute is not resolved within 60 days, then it must be submitted to arbitration. The clauses also provide that "[a]ny other unresolved dispute arising out of this Agreement must be submitted to arbitration." 2007 Payment Agreement at 8; 2009 Payment Agreement at 8. The contract states that the arbitrators "will have exclusive jurisdiction over the entire matter in dispute, including any question as to its arbitrability." 2007 Payment Agreement at 9; 2009 Payment Agreement at 9. Addenda to the payment provisions specify that "any action or proceeding concerning arbitrability, including motions to compel or to stay arbitration, may be brought only in a court of competent jurisdiction in the City, County, and State of New York." Thomas Pet. Aff. Ex. B at 18; *id.* Ex. D at 23.

On November 9, 2015, National Union filed a petition to compel arbitration in this Court. According to the petition, Respondents failed to pay for accrued loss adjustment expenses that they are responsible for under the contracts, and rejected National Union's subsequent arbitration

---

[1] The underlying policies were issued by National Union's affiliate companies rather than by National Union directly. National Union sues on behalf of its affiliates, and for ease of reading the Court will refer to National Union as the insurer.

[2] The agreements are signed "Sam Beelman." Petitioner claims that Frank and Sam Beelman are the same person, and Respondents do not contradict this. *See* Opp. at 3.

[3] The companies are Beelman Logistics, LLC; Beelman River Terminals, Inc.; Beelman Materials, LLC; Beelman Ag Service, LLC; Granite City Slag, LLC; Racehorse Investments, LLC; Transhold, Inc.; and Transload Realty, LLC.

2

demand. Pet. ¶¶ 20, 25–29. Beelman Truck concedes its obligation to arbitrate. Apr. 15, 2016, Conference Tr. 5:17–22. The Resistors oppose the petition.[4]

On January 4, 2016, Beelman Truck filed a third party petition against its former insurance brokers (the "Brokers"), seeking to compel them to join it in arbitration. Beelman Truck signed Letters of Understanding ("Letters") with the Brokers on July 18, 2007 and June 9, 2008.[5] According to the third party petition, the Letters state that the insurers, and not the insureds, are responsible for loss adjustment expenses, and Beelman Truck refused to pay these expenses in reliance on the Letters. Third Party Pet. ¶¶ 11–14, 26, 29–32, 44, 47–52, 64.

## II. Legal Standard

The FAA "requires courts to enforce privately negotiated agreements to arbitrate . . . in accordance with their terms." *Volt Info. Scis., Inc. v. Bd. of Tr. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989). The statute limits the Court's role in adjudicating the petition to "determining two issues: i) whether a valid agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed, neglected or refused to arbitrate." *LAIF X SPRL v. Axtel, S.A. de C.V.*, 390 F.3d 194, 198 (2d Cir. 2004) (citation omitted). If the Court finds that these requirements are met, it must issue "an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

"[A]rbitration is a matter of contract," *see Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 128 (2d Cir. 2010) (citation omitted), and "a party cannot be required to submit to

---

[4] The Resistors filed a purported motion to dismiss the petition. As explained below, however, under 9 U.S.C. § 6, a petition to compel arbitration is a motion, not a pleading. The petition cannot be answered and Rule 12(b) does not apply to it. *See ISC Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98, 113 (2d Cir. 2012) (discussing *Productos Mercantiles E Industriales, S.A. v. Faberge USA, Inc.*, 23 F.3d 41 (2d Cir. 1994)). The Court therefore construes the motion to dismiss as the Resistors' opposition to the petition. Although the legal standard for evaluating a petition to compel arbitration differs from a motion to dismiss, the Court is entitled to apply the correct standard without notice to Respondents. *See Productos Mercantiles*, 23 F.3d at 46.

[5] There are three Brokers named in the third party petition. Rebsamen Insurance, Inc. ("Rebsamen"), was Beelman Truck's broker in connection with the 2007 insurance policies, and signed the 2007 Letter. Regions Insurance of Missouri, Inc. ("Regions"), was Beelman Truck's broker in connection with its 2008 insurance policies, and signed the 2008 Letter. Beelman Truck claims that Rebsamen is defunct, and that Regions has assumed its assets and liabilities. Third Party Pet. ¶¶ 3–5. John West was an employee of first Rebsamen, and then Regions, and signed both the 2007 and 2008 Letters on behalf of his employers.

arbitration any dispute which [it] has not agreed so to submit." *Id.* at 126. The issue of whether the parties are obliged to arbitrate their dispute therefore breaks down into two questions: "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011). The parties can delegate much of the threshold arbitrability inquiry to the arbitrator as long as the contract "clearly and unmistakably" memorializes their intent to do so. *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1031 (2d Cir. 2014) (citation omitted). But the Court must always ascertain for itself whether the resisting party is subject to a valid arbitration agreement, because even the broadest arbitration clause cannot bind a party who never agreed to it. *See Sarhank Grp. v. Oracle Corp.*, 404 F.3d 657, 661 (2d Cir. 2005) ("As arbitrability is not arbitrable in the absence of the parties' agreement, the district court was required to determine whether [Respondent] had agreed to arbitrate."); *Zimring v. Coinmach Corp.*, No. 00 CIV. 8111 LMM, 2000 WL 1855115, at *2 (S.D.N.Y. Dec. 19, 2000) (refusing to order nonsignatory to arbitrate arbitrability despite language of arbitration clause).

Petitions to compel arbitration under the FAA are "made and heard in the manner provided by law for the making and hearing of motions." *ISC Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98, 112 (2d Cir. 2012) (quoting 9 U.S.C. § 6). When evaluating a petition to compel, the Court "applies a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003); *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012). The Court must grant the petition if there is no genuine issue of material fact regarding the requirements to compel arbitration. *Schnabel*, 697 F.3d at 113.

"[I]n evaluating whether the parties have entered into a valid arbitration agreement, the court must look to state law principles." *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 364 (2d Cir. 2003); *Whitehaven S.F., LLC v. Spangler*, 633 F. App'x 544, 545-46 (2d Cir. 2015). The Court will apply New York law in this case because "[t]he parties' briefs

4

assume that New York substantive law governs the issues . . . presented here, and such implied consent is, of course, sufficient to establish the applicable choice of law." *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009). Under New York law, "insurance policies are interpreted according to general rules of contract interpretation." *Olin Corp. v. Am. Home Assurance Co.*, 704 F.3d 89, 98 (2d Cir. 2012). The Court first determines as a matter of law whether the contract is ambiguous when all the terms are given their plain meaning. *Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 313 (2d Cir. 2013). "Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation." *Olin*, 704 F.3d at 99.

If (and only if) the contract is ambiguous, the Court may "look to extrinsic evidence to discern the parties' intent." *Luitpold Pharm., Inc. v. Ed. Geistlich Söhne A.G. Für Chemische Industrie*, 784 F.3d 78, 87 (2d Cir. 2015). "If the extrinsic evidence fails to establish the parties' intent, courts may apply other rules of contract interpretation, including New York's rule of *contra proferentem,* according to which ambiguity should be resolved in favor of the insured." *Olin*, 704 F.3d at 99. If the "evidence presented about the parties' intended meaning is so one-sided that no reasonable person could decide the contrary, or if the non-moving party fails to point to any relevant extrinsic evidence supporting that party's interpretation of the language," then there is no genuine issue of material fact regarding the contract's meaning and the dispute may be resolved as a matter of law. *Luitpold*, 784 F.3d at 88 (citation and internal quotation marks omitted). Otherwise, the ambiguity must be resolved by a jury. *See id.* at 94.

### III.  National Union's Petition to Compel Arbitration

National Union claims that all Respondents, including the Resistors, are signatories to the payment agreements and bound by their arbitration clauses. The Resistors respond that the Court lacks personal jurisdiction over them, and that they never entered an agreement to arbitrate.

Both of the Resistors' arguments turn on the same question: whether they are bound by the payment agreements. In addition to arbitration clauses, the contracts contain forum selection

5

clauses covering litigation over arbitrability. "A valid forum selection clause establishes sufficient contacts with New York for purposes of jurisdiction and venue." *Koninklijke Philips Elecs. v. Digital Works, Inc.*, 358 F. Supp. 2d 328, 333 (S.D.N.Y. 2005); *see D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006) ("Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements."). The Resistors' only argument against the exercise of jurisdiction over them is that they are not signatories to the contracts and therefore did not consent to the forum selection clauses. Accordingly, the Court turns directly to the issue of whether the Resistors are signatories to the payment agreements.

### A. The Payment Agreements Bind All "Subsidiaries" or "Affiliates" of Beelman Truck Listed On Any of the Policies

In order to determine which entities are parties to the payment agreements, the Court must examine the text of the contracts. The payment agreements each include a section entitled "Who Has Agreed to This Agreement?" This section explains that "This Agreement is between: *You*, the organization(s) named as 'our Client' in the *Schedule*, and us, the insurer(s) named in the *Schedule*." 2007 Payment Agreement at 3; 2009 Payment Agreement at 3. Turning to the Schedules, each lists the client as Beelman Truck, "on behalf of *You* and all *Your* subsidiaries or affiliates except those listed below." Thomson Pet. Decl. Exs. B at 12, C at 5, D at 12, E at 1. No subsidiaries or affiliates are listed as excluded. Under the plain text of this provision, all "subsidiaries" and "affiliates" of Beelman Truck are parties to the payment agreements. However, this provision is not the contract's only description of the parties. A second section of the contract, entitled "Which Words Have Special Meaning in This Agreement," identifies the parties to the contract more narrowly. This section defines "You" (as it appears in the contract) to mean "the person or organization named as our Client in the title page of this Agreement, its predecessor and successor organizations, and each of its subsidiary, affiliated or associated organizations that are included as Named Insureds under any of the *Policies*." 2007 Payment Agreement at 4; 2009 Payment Agreement at 4. Under this provision, subsidiaries and affiliates

6

of Beelman Truck are only parties to the contract if they are listed as Named Insureds on at least one of the "*Policies*."

The Court need not decide which of these definitions governs. The difference between the two clauses would only become relevant to the Court's analysis if the Resistors were not listed as Named Insureds under any of the "*Policies*." However, the Resistors *are* listed as Named Insureds on an endorsement to the 2010 Policy, which satisfies the relevant contractual provision. Thomas Opp. Decl. Ex. A at 15. The payment agreements define "Policy" as "any of the insurance *Policies* described by their *Policy* numbers in the *Schedule*, and their replacements and renewals; and any additional insurance *Policies* that we may issue to *You* that *You* and we agree to make subject to this Agreement." 2007 Payment Agreement at 3; 2009 Payment Agreement at 3. "Schedule," in turn, is defined as "each of the attachments to this Agreement that describes specific elements of the Agreement for a specified period of time . . . Additional *Schedules* or amendments to *Schedules* may be attached to this Agreement from time to time by mutual agreement between *You* and us." 2007 Payment Agreement at 4; 2009 Payment Agreement at 4. The 2010 Policy is a replacement for the previous year's policy, and its policy number is listed in the 2010 Schedule. Thomas Pet. Decl. Ex. E at 3. The endorsement naming the Resistors therefore "form[s] a part" of the 2010 Policy, which in turn is one of the "*Policies*" contemplated by the restrictive definition of the parties. Under either definition of "You," then, the Resistors are signatories to the contract if they are subsidiaries or affiliates of Beelman Truck. The Resistors do not contest this reading of the contract. Nor do they suggest that Beelman, who is either president or manager of each Resistor, lacked the authority to sign on their behalf. *See* Beelman Aff ¶¶ 3–10. Instead, the Resistors claim that they are not subsidiaries or affiliates within the meaning of the contract. The Court next considers whether the Resistors are subsidiaries or affiliates of Beelman Truck.

### B. The Resistors Are Bound to Arbitrate Because They Are "Affiliates" of Beelman Truck

The Resistors are signatories to the payment agreements because they are affiliates of Beelman Truck. The contracts do not contain a definition of "affiliate." The Court therefore looks to the plain or ordinary meaning of the term. *See Gary Friedrich*, 716 F.3d at 313. During 2007–2011, the years when the contracts were signed and in effect, Black's Law Dictionary ("Black's") defined an "affiliate" as "A corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation." Black's Law Dictionary (8th ed. 2004). Similarly, Webster's Third New International Dictionary (2002) defines "affiliate" as "a company effectively controlled by another or associated with others under common ownership or control." Under the definition in Black's (8th ed. 2004), the Resistors are "affiliates" of Beelman Truck because they are "sibling" corporations related to Beelman Truck by "shareholdings or other means of control"—specifically, they are all under the control of Beelman himself. Pet. ¶¶ 4–12; Beelman Aff. ¶¶ 3–10. The Resistors, however, argue that the plain meaning of "affiliate" is found in the 1979 edition of Black's, which defines an "affiliate company" as a "[c]ompany effectively controlled by another company. A branch, division, or subsidiary." Black's (5th ed. 1979); *see* Reply at 4. Reliance on the 1979 edition of Black's is not appropriate here because courts interpreting language by consulting dictionaries look for those contemporaneous to the writing at issue. *See U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 77 & n.37 (2d Cir. 2004) (interpreting contract with reference to "current dictionary of legal usage"); *see also, e.g., In re WorldCom, Inc.*, 723 F.3d 346, 354 (2d Cir. 2013) (citing *Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S. Ct. 1997, 2002 & n.2 (2012)) (interpreting statutory text with reference to contemporaneous dictionaries). The language Resistors rely on was removed and replaced with the current definition in the 1999 edition of Black's, almost ten years prior to the writing of the contracts at issue in this case. *See* Black's (7th ed. 1999). Accordingly, the Court will interpret the word "affiliate" in the agreements to mean a corporation related to another corporation by shareholdings or other means of control.

The case for using the Court's definition is bolstered by looking to Federal and New York statutes and regulations. *See Citibank, N.A. v. Franco*, No. 11 CIV. 2925 RMB, 2011 WL 6961404, at *4 n.2 (S.D.N.Y. Dec. 29, 2011) (surveying statutes and regulation and adopting similar definition of affiliate); *Shah v. Wilco Sys., Inc.*, 81 A.D.3d 454, 455 (N.Y. App. Div. 2011) ("[I]t was an appropriate exercise of discretion for the court to clarify the term 'affiliate' by referencing a statutory definition of that term."). These sources are replete with definitions of "affiliate" that encompass corporations who share a controller. *See, e.g.*, 49 U.S.C. § 30106(d)(1) ("The term "affiliate" means a person other than the owner that directly or indirectly controls, is controlled by, or is under common control with the owner."); 11 U.S.C. § 101(2) ("The term "affiliate" means . . . [a] corporation . . . directly or indirectly owned, [or] controlled . . . by the debtor, or by an entity that directly or indirectly owns [or] controls . . . the debtor[.]"); 12 U.S.C. § 1841(k) ("'[A]ffiliate' means any company that controls, is controlled by, or is under common control with another company."); SEC Rule 405, 17 C.F.R. § 230.405 ("An affiliate of, or person affiliated with, a specified person, is a person that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with, the person specified."); SEC Rule 12b-2, 17 C.F.R. § 240.12b-2 (same); N.Y. Banking Law § 6–1(1)(a); N.Y. Ins. Law § 2101(x)(1)(A). Similar definitions of affiliate are also common in contracts that do define the word. *See, e.g., Birmingham Assocs. Ltd. v. Abbott Labs.*, 547 F. Supp. 2d 295, 303 n.66 (S.D.N.Y. 2008); *Telenor Mobile Commc'ns AS v. Storm LLC*, 587 F. Supp. 2d 594, 605 (S.D.N.Y. 2008). Given the authorities reviewed above, and the Resistors' failure to provide any support for their definition other than the 1979 edition of Black's, the Court concludes that the plain meaning of the word "affiliate" unambiguously includes corporations controlled by the same person or entity. *See Citibank*, 2011 WL 6961404, at *4 n.2. Under this reading, the Resistors are "affiliates" of Beelman Truck, and therefore signatories to the contract.

Even if the Court were to find the contract ambiguous and turn to extrinsic evidence of the parties' intent, the Court would still conclude that there is no genuine issue of fact that the Resistors are parties to the contract. The 2008 Letter of Understanding between Beelman Truck

9

and the Brokers states that "All policies shall designate Beelman Truck Co., Beelman River Terminals, Inc., Beelman Logistics, and all affiliated and related companies as named insureds. . . . Such affiliated and related companies are set forth on Exhibit A attached hereto." *See* Pet. Ex. F at 6. Exhibit A to the 2008 Letter names all the Resistors. *Id.* at 13. The phrase "affiliated and related companies as named insureds" in the Brokers' Letter describing the insurance contract procured parallels the phrase "affiliated or associated organizations that are included as Named Insureds" describing the parties in the contract itself. 2009 Payment Agreement at 4. The word "related" is a synonym for "affiliated" and does not imply any additional category of corporate relationship beyond "affiliated" and "associated." *See* Black's (8th ed. 2004). (defining "affiliate" as "[a] corporation that is related to another corporation . . ."). The 2008 Letter indicates that Beelman Truck understood that the Resistors would be covered by the insurance program as "affiliated" or "related" entities. In the absence of any evidence to the contrary, this document is enough to establish that there is no genuine issue of fact regarding the parties' intent to include the Resistors as affiliated named insureds, and thus as signatories to the contract. *Luitpold*, 784 F.3d at 87. The Court concludes that the Resistors are signatories to the payment agreements and bound to the arbitration and forum selection clauses contained in those contracts.

The Resistors raise no other arguments against arbitration. They do not claim that the dispute is outside the scope of the arbitration clause—nor could the Court evaluate such an argument, because the contract specifically delegates arbitrability to the arbitrators. 2007 Payment Agreement at 9; 2009 Payment Agreement at 9; *see NASDAQ OMX*, 770 F.3d at 1031. Nor do the Resistors deny that they rebuffed National Union's arbitration demand. The Court must therefore grant National Union's petition and order the Resistors to participate in arbitration.

### IV. Beelman Truck's Third Party Petition to Compel Arbitration

Beelman Truck's Third Party Petition seeks to compel the Brokers to join it in arbitration with National Union to resolve claims arising from the Brokers' representations in the Letters of Understanding. However, the Brokers are not signatories to the payment agreements, and the Letters contain no arbitration clause. The Second Circuit recognizes only five theories under which a non-signatory can be compelled to arbitrate: "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003); *Ross v. Am. Exp. Co.*, 547 F.3d 137, 143 & n.3 (2d Cir. 2008); *McKenna Long & Aldridge, LLP v. Ironshore Specialty Ins. Co.*, No. 14-CV-6633 (KBF), 2015 WL 144190, at *6 (S.D.N.Y. Jan. 12, 2015). Beelman Truck invokes two of these theories: incorporation by reference, and estoppel.[6]

#### A. The Brokers Cannot Be Compelled to Arbitrate Under an Incorporation by Reference Theory

"A nonsignatory may be bound by an arbitration agreement when it has entered into a separate contractual relationship with a signatory that incorporates the existing arbitration clause." *McKenna Long*, 2015 WL 144190, at *6; *see Aceros Prefabricados, S.A. v. TradeArbed, Inc.*, 282 F.3d 92, 97 (2d Cir. 2002) ("[P]arties to a contract are plainly free to incorporate by reference, and bind themselves *inter sese* to, terms that may be found in other agreements."). Under New York law, a document is incorporated by reference into a contract if

---

[6] In its reply brief, Beelman Truck raises an agency theory for the first time. "[N]ew arguments may not be made in a reply brief," and the Court need not consider this theory. *Ernst Haas Studio, Inc. v. Palm Press, Inc.*, 164 F.3d 110, 112 (2d Cir. 1999). Furthermore, the argument is meritless. "Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Merrill Lynch*, 337 F.3d at 130. Beelman Truck's claim is that the Brokers were *its* agent, not that it was the Brokers' agent. Third Party Reply at 5. "An agreement to arbitrate does not bind an agent acting on behalf of a disclosed principal 'unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal.'" *Veera v. Janssen*, No. 05 CIV. 2145 (SHS), 2005 WL 1606054, at *3 (S.D.N.Y. July 5, 2005) (quoting *Lerner v. Amalgam. Clothing & Textile Workers Union*, 938 F.2d 2, 5 (2d Cir.1991)). No such evidence has been provided, so Beelman Truck's agreement to arbitrate cannot bind the Brokers under an agency theory.

(1) "it is clearly identified in the agreement," *Mikada Grp., LLC v. T.G. Nickel & Assocs., LLC*, No. 13 CIV. 8259, 2014 WL 7323420, at *13 (S.D.N.Y. Dec. 19, 2014) (quoting *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1201 (2d Cir. 1996)), and (2) the contract contains "language that clearly communicates that the purpose of the reference is to incorporate the referenced material into the contract, rather than merely to acknowledge that the referenced material is relevant to the contract, e.g., as background law," *Intesa Sanpaolo, S.p.A. v. Credit Agricole Corp. & Inv. Bank*, No. 12 CIV. 2683 RWS, 2013 WL 4856199, at *3 (S.D.N.Y. Sept. 10, 2013) (brackets, citation, and internal quotation marks omitted); *see Gen. Ry. Signal Corp. v. L.K. Comstock & Co.*, 254 A.D.2d 759, 759 (N.Y. App. Div. 1998).

Beelman Truck argues that the payment agreements are incorporated by reference by language at the beginning of each letter stating that

> The purpose of this agreement is to set forth the intent of the parties in an effort to eliminate any misunderstandings or ambiguities and ensure that there are no questions regarding the coverage and accessorial services purchased by the Beelman Companies. This Letter of Understanding shall further enhance the parties relationship and shall supersede any agreements thus far whether oral or written, in conflict herewith.

Thomas Pet. Decl. Ex F at 1, 6. The rest of the letter purports to set forth the main terms of the insurance coverage that Respondents purchased through their brokers. This language does not meet either requirement under New York law for incorporation by reference. First, it does not specifically identify the payment agreements. In fact, although the terms of the insurance policy are at least discussed, the payment agreement and its terms are not even mentioned. Second, as the Resistors concede, the Letters do not expressly incorporate the payment agreements (or any other document, for that matter) by reference. Third Party Reply at 3. Both Letters were signed several months prior to the signing of the insurance contracts they summarize. The Letters set forth the major insurance policy terms that the Brokers claim to have secured for Respondents. However, nothing in the Letters suggests that the Brokers agreed to abide by the terms of the underlying insurance policies, much less the payment agreements. The Brokers therefore cannot be compelled to arbitrate under a theory of incorporation by reference.

## B. The Brokers Cannot be Compelled to Arbitrate Under an Estoppel Theory

Beelman Truck claims that the Brokers are estopped from resisting arbitration under the payment agreements because of the "close and connected relationship between the nonsignatory [the Brokers] and the signatory [Beelman Truck] to an arbitration agreement." Third Party Pet. ¶ 25. Courts will "estop a *signatory* from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed, and the signatory and nonsignatory parties share a close relationship." *MAG Portfolio Consultant, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 62 (2d Cir. 2001) (citation and quotation marks omitted); *see Baker & Taylor, Inc. v. AlphaCraze.Com Corp.*, 602 F.3d 486, 491 (2d Cir. 2010). However, as the Brokers point out, this theory does not work in reverse: it "is not applicable in a situation like the case before us, where the signatory to an arbitration clause seeks to enforce it against a nonsignatory." *MAG*, 268 F.3d at 62; *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995); *see F. Hoffmann-La Roche Ltd. v. Qiagen Gaithersburg, Inc.*, 730 F. Supp. 2d 318, 329 (S.D.N.Y. 2010). Beelman Truck, and not the Brokers, signed the payment agreements, so Beelman Truck cannot force the Brokers to arbitrate under this theory of estoppel.

In its reply brief, Beelman invokes a second doctrine, direct benefit estoppel, under which a signatory *can* force a nonsignatory to arbitrate. If a party "knowingly accepted the benefits of an agreement with an arbitration clause, even without signing the agreement," they may be bound by the arbitration clause. *Hirsch v. Citibank, N.A.*, 542 F. App'x 35, 37 (2d Cir. 2013) (citing *MAG*, 268 F.3d at 61). This argument is new in Beelman Truck's reply brief, and the Court need not consider it. *Ernst Haas Studio, Inc. v. Palm Press, Inc.*, 164 F.3d 110, 112 (2d Cir. 1999). Furthermore, it is meritless. In order for direct benefit estoppel to apply, the agreement must be the *direct* source of the benefit. *Hirsch*, 542 F. App'x at 37 (citing *MAG*, 268 F.3d at 61-62). Even if the "agreement was crucial to the benefit the third party gained," the third party cannot be estopped if the benefit stems "from the nonsignatory's exploitation of the

13

contractual relation created through the agreement" rather than from the agreement itself. *MAG*, 268 F.3d at 62; *McKenna Long*, 2015 WL 144190, at *10. That is precisely the case here. The Brokers may have received a benefit (*i.e.* a commission) because the insurance contracts were eventually signed by National Union and Beelman Truck. But any such benefit stems from (1) the creation of the contractual relationship between insurer and insured, and (2) the brokerage agreement between Beelman Truck and the Brokers, rather than from the insurance agreement itself. *See Thomson-CSF*, 64 F.3d at 779; *Arhontisa Mar. Ltd. v. Twinbrook Corp.*, No. 01 CIV. 5044 (GEL), 2001 WL 1142136, at *4 n.1 (S.D.N.Y. Sept. 27, 2001) ("If [the seller] authorized [its sale agent] to retain some portion of the money as a fee, in contrast, any benefit due to [the agent] would flow not from the contract of sale, but from [the agent's] contract of engagement with [the seller]."); *Masefield AG v. Colonial Oil Indus.*, No. 05 CIV. 2231 (PKL), 2005 WL 2105542, at *4 (S.D.N.Y. Sept. 1, 2005) (estoppel not available where nonsignatory "participated in negotiating and drafting the Contract," and Contract caused nonsignatory to receive benefit under a separate agreement). Because the Brokers did not seek or obtain any direct benefit from the payment agreements (or any of the contracts between Beelman Truck and its insurers), they are not bound to the arbitration clauses contained in those contracts. *Cf. Int'l Chartering Servs., Inc. v. Eagle Bulk Shipping Inc.*, 138 F. Supp. 3d 629, 637 (S.D.N.Y. 2015) (brokers suing to recover ongoing commissions were bound under direct benefit estoppel theory where underlying contract containing arbitration clause set out their right to those commissions).

Because Beelman Truck has failed to put forward a viable theory by which the Brokers could be bound to arbitrate under the payment agreements, the Court denies the third party petition to compel arbitration.

## V. Conclusion

For the reasons set forth above, National Union's petition is granted and the Beelman Truck's petition is denied. This resolves Dkt. Nos. 29 and 32. No later than September 9, 2016, Respondents shall submit a letter to the Court confirming that they have selected their arbitrator.

SO ORDERED.

Dated: August 24, 2016
New York, New York

_____
ALISON J. NATHAN
United States District Judge